# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY LEE GRAY,<br>       Plaintiff | :<br>:<br>:   CIVIL NO. 3:09-cv-0979 |
| v. | :<br>:   (Judge Nealon) |
| DAVID J. WAKEFIELD, et al.,<br>       Defendants | :<br>: |

FILED
SCRANTON

SEP 2 7 2012

PER _____
DEPUTY CLERK

## MEMORANDUM

### Procedural Background

On May 22, 2009, Plaintiff, Anthony Lee Gray, an inmate currently incarcerated at the Rockview State Correctional Institution in Bellefonte, Pennsylvania, filed the above captioned action against numerous employees of the State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), Plaintiff's former place of confinement. (Doc. 1). The complaint alleged, inter alia, that Defendants assaulted Plaintiff multiple times in June, 2007, and delayed medical care for more than a month. (Id.).

On June 22, 2009, Plaintiff filed an amended complaint expanding on his allegations of abuse and medical indifference at SCI-Huntingdon. (Doc. 8). Among the named Defendants is Allison Brown, a physician's assistant at SCI-Huntingdon. (Id.).

On July 29, 2009, Defendant Brown filed a motion to dismiss the amended complaint. (Doc. 14). The motion was granted in part on February 23, 2010, and the conspiracy claims under 42 U.S.C. §§ 1983, 1985, and 1986 were dismissed as to Defendant Brown, but Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Brown remains. (Doc. 30). Defendant Brown filed an answer to the amended complaint on March 11, 2010. (Doc. 33).

On December 30, 2010, after the parties engaged in discovery, Defendant Brown filed a motion for summary judgment, and supporting documents, arguing: (1) Plaintiff failed to exhaust administrative remedies; (2) there is insufficient evidence to support a jury verdict on the issue of deliberate indifference to a serious medical need because Plaintiff has only demonstrated a disagreement with the medical care provided and not shown that Defendant Brown knew her conduct presented a substantial risk of harm; (3) there is insufficient evidence to establish "but for" causation on Plaintiff's claim pursuant to 42 U.S.C. §1983; and (4) Plaintiff has not produced the necessary expert testimony for this sophisticated medical case based upon 42 U.S.C. §1983. (Docs. 58-60). On March 4, 2011, Plaintiff filed a brief in opposition, statement of facts, and exhibits in response to the motion. (Docs. 77-79). Around this time, the remaining Defendants also filed a motion for summary judgment alleging Plaintiff failed to exhaust administrative remedies. See (Docs. 66-71, 81-83).

On September 16, 2011, this Court denied the motions for summary judgment without prejudice because the record was insufficient to determine which claims were addressed on the merits by the Department of Corrections Deputy Secretary's Office and therefore exhausted. (Doc. 90). This Court did not discuss the merit of Plaintiff's claims. (Id.).

On February 21, 2012, Defendant Brown filed a second motion for summary judgment reasserting her arguments not initially addressed by this Court as to why judgment should be entered in her favor. (Docs. 91-93). Plaintiff filed a two-page brief in opposition to the motion on May 14, 2012, alleging that these issues were previously decided and asking that his prior response to Defendant Brown's motion to dismiss, his exhibits, and his brief in opposition to Defendant Brown's first motion for summary judgment be incorporated. (Doc. 97). Defendant

Brown submitted a reply brief asserting that Plaintiff violated Local Rule 56.1 by not responding to her statement of facts. (Doc. 98).

For the reasons stated herein, this Court will grant Defendant Brown's second motion for summary judgment.

**Factual Background**

   A.   **Rule 56.1**

Defendant Brown argues that Plaintiff violated Local Rule 56.1 by failing to respond to her statement of uncontested facts. See (Docs. 93, 98). Rule 56.1 provides:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. ... All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

M.D. Pa. L.R. 56.1. Defendant Brown asserts that Plaintiff's response does not comply with this Rule and, thus, Plaintiff has admitted the truth of all her statement of facts.

Additionally, Defendant Brown states that although Plaintiff seeks to incorporate his response to Defendant Brown's motion to dismiss, his exhibits, and his brief in opposition to Defendant Brown's first motion for summary judgment, Plaintiff does not ask that his statement of facts in response to Defendant Brown's first summary judgment motion also be incorporated. (Docs. 97-98). Defendant Brown further argues that even if Plaintiff had, incorporation would be inadequate because the two statements of facts differ substantially, cover different topics, and do not parallel each other in numbering. (Doc. 98).

This Court has reviewed Defendant Brown's two statements of facts and finds that they

do not differ substantially. Compare (Doc. 60), with (Doc. 93). The most recent statement of facts excludes the section on grievances and the declaration of Dorina Varner, but otherwise contains almost identical statements. See id. Although in different numbered paragraphs, Plaintiff's first statement of facts responds to each of Defendant Brown's most recent statements of facts. See (Doc. 79). While this Court recognizes that even pro se prisoners are required to comply with procedural rules, they are accorded substantial deference. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Contrary to Defendant Brown's argument, it is not impossible to know as to which statement of uncontested fact Plaintiff responded. This Court will incorporate Plaintiff's first statement of facts and therefore finds that he has not admitted the truth of all Defendant Brown's stated facts.

**B.      Facts**

Accepting Plaintiff's evidence as true, the following facts have been determined from the affidavits, depositions, medical reports, and other evidence of record.[1]

On June 6, 2007, Plaintiff was attacked by correctional officers at SCI-Huntingdon. He was seen the same day by medical staff, to whom he complained of swelling to his face and head, and of scratches to his wrist. His medical records state that there were no visible injuries, Plaintiff had good range of movement in both hands and wrists, and was able to talk and ambulate without difficulty, which Plaintiff contends was an attempt to cover up the assault.

On June 7, 2007, Plaintiff was seen in the Hypelipidemia Clinic and the Asthma Clinic.

On June 8, 2007, Plaintiff was examined by a doctor, complaining of pain in his right arm

---

[1]Because the instant Memorandum addresses only Defendant Brown's motion for summary judgment, this Court will not provide a detailed account or address conflicting evidence of any events that do not directly bear on Defendant Brown's liability.

and body. It was determined that he had a head contusion and soft tissue injury. The doctor proscribed Tylenol for pain, Elavil for depression, and ordered blood pressure checks.

On June 10, 2007, Plaintiff complained of chest pain, but when a nurse arrived at his cell, Plaintiff sprayed her in the eyes with an unknown fluid. Plaintiff was extracted from his cell later that day, during which two corrections officers assaulted him. Plaintiff was repeatedly shocked, kicked, and was left chained to a wall naked. Officers searched Plaintiff's cell and found a shank made from plastic matching his asthma inhaler. A nurse refused to treat or photograph his injuries. Plaintiff's medical records state that he complained of pain in his wrist, head, and back, but the medical staff observed no visible injuries from the cell extraction. Tylenol, blood pressure checks, and Plaintiff's asthma medication, QVAR, were discontinued, and the doctor ordered that the Elavil be crushed and that staff administer an Albuterol Inhaler as needed.[2]

On June 11, 2007, medical staff reported that Plaintiff intended to harm himself and wanted to see psychiatry, which Plaintiff denies. The psychiatrist was contacted and suggested that Plaintiff be put on the psychiatry list for the following day and that security handle his behavior. Later that day, Plaintiff was temporarily removed from his cell. He was both physically and sexually assaulted. When Plaintiff started to have an asthma attack, a nurse administered two puffs of his inhaler. Plaintiff suffered a deep gash to his wrist, a thumb which felt broken, sore and swollen fingers and hands, cuts, scrapes, and bruises to his shoulders, knees, face, and head, burns from the use of a stun gun to his legs, back, genitals, buttocks, arms, hands, and shoulders, and bleeding and pain in his rectum. The medical reports confirm the use of a

---

[2] Although Plaintiff disputes the discontinuance order based on the alleged absence of written proof, the medical records do reflect these orders. See (Doc. 92, Ex. C, p. 13).

stun gun during extraction, but assess him as medically stable and note no visible injuries. Plaintiff contends medical care was denied, but the medical reports indicate he refused treatment.

On June 13, 2007, a nurse spoke with Plaintiff about HIV counseling, but he asked that it be done at a later time.

As this Court determined in its Memorandum and Order addressing Defendant Brown's motion to dismiss, the only allegations against Defendant Brown in the amended complaint appear in paragraph 77, which states:

> Gray requested medical and dental sick call almost every day from June 12, 2007 until July 27, 2007, and was denied medical and dental sick call each and every time. Defendant Brown would not treat any of Plaintiff's injuries or order any x-rays or other diagnostic testing even after Plaintiff expressed all of his concerns and outlined all of his injuries. Defendant Brown would not even go up to Plaintiff's cell door, because there was a large shield on wheels placed in front of Plaintiff's cell door so Plaintiff could not see out of the cell, and no one could see in the cell.

(Doc. 8, ¶ 77); (Doc. 30, pp. 13, 16) (ruling that because Plaintiff alleged Defendant Brown failed to provide any medical treatment, his amended complaint included adequate factual allegations of an Eighth Amendment violation to survive the motion to dismiss stage). Initially Plaintiff did not have paper privileges and had to request sick calls through the corrections officers. He complained about his injuries to a deputy, who stated that he would send someone to see him.

On June 15, 2007, when Defendant Brown arrived at Plaintiff's cell, she could not see in because a sheet covered the plexiglass window. Plaintiff informed her that he had developed a foot fungus from walking on the dirty floor, that there was blood everywhere, and that he was denied showers. Plaintiff also advised Defendant Brown that he wanted her to examine him, was

having asthma attacks, thought his fingers were broken, had cuts, had severe back pain causing him to fall,[3] and that his mouth and teeth were bleeding. Defendant Brown prescribed foot creme without identifying Plaintiff's infection, but failed to provide any other medical care.

However, according to the medical records and Defendant Brown's affidavit, she responded, at the direction of the Health Care Administrator, to Plaintiff's cell on June 15, 2007, for a sick call request regarding a rash. Upon arrival, Plaintiff complained of a rash to his feet and groin. Defendant Brown observed Plaintiff through the plexiglass window to his cell. He had a dry, flaky rash between his toes and a bumpy rash on his inner thighs, but moved without difficulty. Plaintiff never informed Defendant Brown of any injuries.

Defendant Brown had no further contact with Plaintiff after June 15, 2007. She was not involved with collecting sick call requests or scheduling sick calls for inmates. Additionally, there was no entry in Plaintiff's medical records that he ever signed up for sick call but was not seen. There are several later entries in Plaintiff's medical reports by other medical staff, none of which indicate the presence of any physical injuries from the assaults.[4]

## Standard of Review- Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v.

---

[3]Notably, Plaintiff suffers from a slipped disc in his back, which was diagnosed around October 2006, and requires treatment for pain. (Doc. 80, p. 2).

[4]There is mention in the medical records that Plaintiff requested his asthma inhaler on August 4, 2007, that he has been experiencing night sweats since 2005, and that a psychiatry referral was made on September 28, 2007.

Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; Celotex, 477 U.S. at 324; Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "Inferences should be drawn in the light most favorable to the

non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

**Standard of Review- Deliberate Indifference**

The United States Supreme Court holds "that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999), citing Estelle v. Gamble, 429 U.S. 97 (1976). "For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate (1) that defendants were deliberately indifferent to his medical needs, and (2) that those needs were serious." Anderson v. Diguglielmo, 406 Fed. Appx. 574, 577 (3d Cir. 2011) (citing Rouse, 182 F.3d at 197); see also White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990) (holding, "[o]nly 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation") (internal citations omitted).

Deliberate indifference occurs when a prison official knows of and disregards an excessive risk to a prisoner's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "A finding of deliberate indifference must be based on what an official actually knew, rather than what a reasonable person should have known." Cidone v. Blume, 2011 U.S. Dist. LEXIS 64192, *18 (M.D. Pa. 2011) (Rambo, J.) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001)). Deliberate indifference has been found where the prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical care

based on a non-medical reason, or prevents a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 197. However, "negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference." Clark v. Fleming, 2011 U.S. Dist. LEXIS 24584, *17-18 (M.D. Pa. 2011) (Caputo, J.), citing Estelle, 429 U.S. at 106; Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Further, a complaint's mere conclusory allegations that medical defendants acted "intentionally" or "recklessly" without supporting factual allegations is insufficient to establish deliberate indifference. Horan v. United States, 2009 U.S. Dist. LEXIS 127743, *29 (M.D. Pa. 2009) (Mannion, M.J.), adopted by, 2009 U.S. Dist. LEXIS 19650 (M.D. Pa. 2009) (McClure, J.) (granting summary judgment).

A medical need is "serious" if it has been diagnosed by a doctor as requiring treatment or is so obvious that a lay person would easily recognize the need for medical treatment. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Additionally, if the delay or denial of adequate medical care results in the unnecessary and wanton infliction of pain or causes an inmate to suffer a life-long handicap or permanent loss, the medical need is "serious." Id.

Prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. Young v. Kazmerski, 266 Fed. Appx. 191, 194 (3d Cir. 2008). "An allegation of deliberate indifference, by its very nature, precludes those periods of time where Plaintiff did receive medical care." Wishnefsky v. Salameh, 2009 U.S. Dist. LEXIS 124600, *15 (W.D. Pa. 2009).

**Discussion**

A.   **Serious Medical Needs**

Plaintiff has not presented any evidence that the medical need he suffered on June 15, 2007, was diagnosed by a doctor as requiring medical treatment or was so obvious that a lay person would recognize the need for treatment, nor has he alleged a life-long handicap or permanent loss. See Monmouth County Corr. Inst. Inmates, 834 F.2d at 347. The only diagnosed conditions at that time were a slipped disc in Plaintiff's back and asthma; however, because he suffered from both ailments prior to the June 2007 assaults, they do not support his Eighth Amendment claim. See Walker v. City of Phila., 2010 U.S. Dist. LEXIS 79037, *16-17 n.6 (E.D. Pa. 2010) (concluding that to the extent the plaintiff argued that he suffered from back pain, depression, and paranoid schizophrenia because of a constitutional deprivation of medical care, the record did not support a claim because he suffered from these conditions prior to his incarceration). Accordingly, Plaintiff's complaint that when he had an asthma attack, the slipped discs in his back would cause him to fall do not support his Eighth Amendment claim against Defendant Brown because he does not allege that he was having an asthma attack when Defendant Brown spoke with him on June 15, 2007. See Tasby v. Cain, 86 Fed. Appx. 745, 746 (5th Cir. 2004) (determining that the plaintiff did not show a serious harm when he suffered an alleged inability to use an inhaler while in restraints); Kwanzaa v. Mee, 2011 U.S. Dist. LEXIS 69531, *51 (D.N.J. 2011) (finding that isolated incidents when no nurse was called during the plaintiff's asthma attacks do not constitute a serious medical need under the Eight Amendment).

Plaintiff informed Defendant Brown that his fingers might be broken and he had cuts, bruises, and bleeding in his mouth and teeth; however, the courts have repeatedly determined that

such injuries do not constitute a serious medical need. See Cidone v. Blume, 2011 U.S. Dist. LEXIS 64192, *20 (M.D. Pa. 2011) (Rambo, J.) (finding that a cut lip, black eye, and nose injury do not constitute a serious medical need); Banks v. Beard, 2006 U.S. Dist. LEXIS 52985, *41 (W.D. Pa. 2006) (concluding, "the injuries plaintiff suffered during these altercations do not constitute a serious medical need. Injuries such as cuts, scrapes, scratches, bruises and a swollen black eye simply do not in themselves reflect trauma that necessarily calls for immediate medical treatment from a physician."). The addition of athlete's foot or a rash, regarding which Defendant Brown claims to have been informed, also do not constitute a serious medical need. See Tsakonas v. Cicchi, 308 Fed. Appx. 628, 632 (3d Cir. 2009) (determining that the ailments of "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles" were not serious medical needs); McKeithan v. Beard, 2010 U.S. Dist. LEXIS 50666, *9-14 (W.D. Pa. 2010) (reasoning that because the inmate's skin condition did not result in bleeding and could be treated by over-the-counter medication, it was not a serious medical need), adopted by, 2010 U.S. Dist. LEXIS 50689 (W.D. Pa. 2010) (granting summary judgment).

In Walker, the prisoner alleged deliberate indifference to his medical needs, which consisted of, "an alleged broken nose, the lack of treatment for bruises, the lack of treatment after being sprayed with pepper spray, not being seen by a doctor immediately following the ... incident," and being proscribed a medication that can cause suicidal effects. Walker, 2010 U.S. Dist. LEXIS 79037 at *16. The plaintiff claimed that he suffered "from severe back pain, a permanently bruised face, depression, and schizophrenia," but failed to point to any evidence demonstrating his suffering. Id. (noting that the plaintiff suffered from back pain, depression, and paranoid schizophrenia prior to his incarceration). The Court determined that the "medical

records [were] void of any reference to a broken nose, and there [was] no evidence of a permanently bruised face or a back injury." Id. Consequently, the Court held, "the plaintiff did not have a serious medical need sufficient to survive summary judgment." Id.

In Freeman, the inmate complained of a broken finger and marks to his wrist and shoulder; however, x-rays were negative and the medical records reported only minor abrasions and soreness to the plaintiff's finger and shoulder. Freeman v. Dep't of Corr., 2011 U.S. Dist. LEXIS 34551, *31-35 (M.D. Pa. 2011) (Munley, J.), affirmed by, 2011 U.S. App. LEXIS 20436 (3d Cir. 2011). The Court concluded that in the absence of expert testimony to the contrary, the plaintiff's injuries did not constitute a serious medical need and granted summary judgment. Id.

The medical records in the instant case are similarly void of any evidence of a broken finger or any other injuries. Plaintiff's medical complaints do not constitute an obvious serious medical need and his failure to present expert testimony is therefore fatal to his case. See Young v. Beard, 2012 U.S. Dist. LEXIS 71453, *22 (W.D. Pa. 2012) (concluding, "[w]here the plaintiff's condition is not so obvious that its seriousness would be apparent to a lay person, the plaintiff must present expert testimony or evidence"). Accepting Plaintiff's allegations as true, the injuries he was suffering from on June 15, 2007,[5] when Defendant Brown spoke with Plaintiff are not evidence of a serious medical need.

Plaintiff has also failed to show that he suffered a serious medical need as a result of the denial in treatment by Defendant Brown. Where the injuries, alone, do not present a serious medical need, a plaintiff may support an Eighth Amendment claim by establishing that the delay

---

[5]This Court notes that it is only ruling on the nature of Plaintiff's injuries when Defendant Brown was involved with his care, and the determination that Plaintiff did not have a serious medical need at that time is not dispositive for the remaining medical defendants.

or denial of adequate medical care caused "unnecessary and wanton infliction of pain." See Monmouth County Corr. Inst. Inmates, 834 F.2d at 347. "'An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.'" Hakeem v. Salam, 2007 U.S. Dist. LEXIS 18177, *22 (M.D. Pa. 2007) (Vanaskie, J.) (quoting Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995)). "Only if the delay in diagnosis and treatment caused substantial harm may deliberate indifference be shown." Id. at *21-23 (finding that despite the defendant's failure to examine the plaintiff's throat and observe the uvulitis later seen by a doctor, the plaintiff presented no evidence that he suffered substantial harm by the delayed diagnosis). Absent an obvious causal relationship between the alleged deliberate indifference and the injuries, the plaintiff must present expert medical testimony. Walthour v. Tennis, 2009 U.S. Dist. LEXIS 81794, *11 (M.D. Pa. 2009) (Vanaskie, J.) (granting summary judgment). Here, there is no evidence, and no expert testimony, that Defendant Brown's conduct caused Plaintiff to suffer substantial harm.

### B. Deliberate Indifference

Assuming arguendo that Plaintiff's medical needs were serious, Defendant Brown is nevertheless entitled to summary judgment because there is insufficient evidence that she was deliberately indifferent in her treatment of Plaintiff. The record establishes that Defendant Brown's only contact with Plaintiff was on June 15, 2007, when she was told to report to Plaintiff's cell for a verbal sick call request regarding a rash. After speaking with Plaintiff about his medical complaints, Defendant Brown was not involved in his treatment again. She also had no responsibility in collecting or scheduling sick calls. See Walker, 2010 U.S. Dist. LEXIS

79037 at *16-17 (holding that the plaintiff failed to demonstrate deliberate indifference by two of the medical defendants because there was only one reference to each and neither incident demonstrated that they knew of and disregarded an excessive risk to the plaintiff's health).

A finding of deliberate indifference must be based on what Defendant Brown actually knew. Cidone, 2011 U.S. Dist. LEXIS 64192 at *18. Whether or not Plaintiff disputes the information contained in his medical reports, there is no evidence that Defendant Brown had knowledge that they were inaccurate. According to the records, Plaintiff received medical attention daily between June 6, 2007, and June 11, 2007, and on June 13, 2007. Importantly, the medical reports state that Plaintiff was assessed after each incident, had no visible injuries, and was medically stable.[6] Although Plaintiff informed Defendant Brown about all his medical complaints and asked to be examined on June 15, 2007, there is insufficient evidence that she disregarded an excessive risk to Plaintiff's health. See Hemingway v. Corr. Med. Servs., 2010 U.S. Dist. LEXIS 118266, *7-10 (D.N.J. 2010) (granting summary judgment as to the plaintiff's Eighth Amendment claim that the medical staff failed to treat his injuries and did not document his medical records because he failed to offer evidence of the 'deliberate indifference' element and the medical records established that the defendants provided treatment immediately after the plaintiff's attack and regularly checked him to ensure the proper healing of the wounds).

Accepting Plaintiff's account[7] that Defendant Brown failed to conduct a physical

---

[6] This Court recognizes that on June 8, 2007, a doctor diagnosed Plaintiff with a probable head contusion and soft tissue injury, and prescribed pain medication; however, this medication was discontinued two days later.

[7] But see Carpenter v. Kloptoski, 2012 U.S. Dist. LEXIS 128049, *12-13 (M.D. Pa. 2012) (Conner, J.) (granting summary judgment on the medical indifference claim because there was no evidence beyond the plaintiff's "unsupported allegations that he was never examined, and

examination, this inaction does not demonstrate deliberate indifference. "To establish deliberate indifference, the plaintiff must allege more than just a single episode of errant medical treatment. Plaintiff must show that the practitioner engaged in 'persistent conduct in the face of resultant pain and risk of permanent injury.'" Parker v. Frame, 1992 U.S. Dist. LEXIS 4188, *6 (E.D. Pa. 1992), quoting White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990) (holding that "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or 'to be repugnant to the conscience of mankind,'"). Given the medical treatment Plaintiff had already received, Defendant Brown's decision not to physically examine him is nothing more than a disagreement with the care provided. See Milliner v. Diguglielmo, 2011 U.S. Dist. LEXIS 64439, *12-13 (E.D. Pa. 2011) (concluding that because defendant Machak was responsive to the plaintiff's complaints and the plaintiff was receiving medical attention from physicians, the defendant's failure to conduct a physical examination does not amount to deliberate indifference, but a mere disagreement with the care provided).

In Gravley, the Third Circuit Court of Appeals affirmed the order granting summary judgment to a nurse-defendant because the record did not establish that she was aware the plaintiff was in need of immediate medical attention for his asthma. Gravley v. Tretnik, 414 Fed. Appx. 391 (3d Cir. 2011). The plaintiff suffered an asthma attack in his cell and his inhaler had only enough medication for one puff so he reported his condition to a corrections officer. Id. The officer contacted the nurse-defendant, but never informed her that the plaintiff was in a state of emergency. Id. The officer then advised the plaintiff that the nurse-defendant would provide more medication in the morning. Id. Overnight the plaintiff lost consciousness and hit his head

---

his bald assertion that the medical records have been falsified").

on the floor. Id. The Court determined that although there had been some discussion about a new inhaler for the plaintiff, there was no evidence the nurse-defendant was informed the plaintiff was having an asthma attack or other medical emergency. Id. Therefore, the plaintiff did not provide an evidentiary basis for concluding that the nurse-defendant had a sufficiently culpable state of mind. Id.

On June 15, 2007, Plaintiff was not having an asthma attack or experiencing any other medical emergency. Consequently, Defendant Brown's failure to conduct a physical examination was, at most, negligent and does not give rise to an Eighth Amendment violation. See Clark, 2011 U.S. Dist. LEXIS 24584 at *17-18. Defendant Brown's motion for summary judgment will be granted.

**Conclusion**

Plaintiff's injuries on June 15, 2007, do not constitute a serious medical need. Additionally, there is no evidence that Defendant Brown's conduct caused Plaintiff to suffer substantial harm. Without a serious medical need, Plaintiff's Eighth Amendment claim must be denied. Moreover, Plaintiff failed to show that Defendant Brown acted with deliberate indifference. Defendant Brown's only involvement with Plaintiff's medical care was on June 15, 2007, and her failure to conduct a physical examination is not sufficient evidence of a culpable state of mind. Defendant Brown's motion for summary judgment will be granted.

A separate Order will be issued.

**Date:** September 28, 2012

United States District Judge